UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| OSCAR DARIO GALLEGO OSORIO,<br><br>    Petitioner,<br><br>v.<br><br>MARCELLO VILLEGAS, et al.,<br><br>    Respondents. | No. 1:25-CV-293-H |

## ORDER

Before the Court are Oscar Dario Gallego Osorio's emergency motions for a temporary restraining order (Dkt. Nos. 2; 12). He contends that the Central District of California's orders in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873, entitle him to a bond hearing. Dkt. No. 2 at 6. Moreover, in his renewed motion for TRO, Gallego Osorio asks the Court to enjoin the respondents from removing him from the United States or transferring him to a facility outside the Northern District of Texas without prior notice. Dkt. No. 12 at 2–3. He also requests that the Court vacate its briefing schedule and expedite the government's answer in advance of an immigration hearing later this month. *Id.* at 3.

The motions (Dkt. Nos. 2; 12) are denied. Gallego Osorio cannot show a significant likelihood of success on the merits because the Court is not bound by the advisory opinions in *Maldonado Bautista*. *Calderon Lopez v. Lyons*, __ F. Supp. 3d __ , 2025 WL 3683918, at *7–11 (N.D. Tex. Dec. 19, 2025). And Gallego Osorio's request for a stay of removal is, at best, premature. If the respondents initiate Gallego Osorio's removal while this litigation is pending, he may seek appropriate relief at that time.

1.   **Background**

Gallego Osorio is a native and citizen of Colombia. Dkt. No. 2-2 at 11. In 2022, he entered the United States and was apprehended at the border. *Id.*; Dkt. No. 2-1 at 2. But instead of removing Gallego Osorio, immigration officials released him into the country on humanitarian parole. Dkt. No. 2-2 at 4–5. He continued to reside in the United States until he was detained on November 21, 2025. Dkt. No. 2-1 at 2.

In mid-December, an immigration judge declined to hold a bond hearing on the ground that Gallego Osorio is an "applicant for admission" and is therefore subject to mandatory detention under 8 U.S.C. § 1225(b). *Id.*; *see Zuniga v. Lyons*, __ F. Supp. 3d __ , 2025 WL 3755126, at *3–5 (N.D. Tex. Dec. 29, 2025). According to Gallego Osorio, this decision "flagrantly disregarded the binding *Maldonado Bautista* judgment and instead followed the BIA's decision in *Matter of Yajure Hurtado*, which has been overruled as to class members." Dkt. No. 2 at 6.

On December 31, 2025, Gallego Osorio filed a petition for a writ of habeas corpus requiring the respondents to release him or, alternatively, provide him with a bond hearing within seven days. Dkt. No. 1 at 7. Specifically, Gallego Osorio maintains that he is entitled to a bond hearing because he is a member of the Bond Eligible Class certified in *Maldonado Bautista*. *Id.* at 5. At the same time, Gallego Osorio filed a motion for TRO raising the same general arguments as his habeas petition. *See* Dkt. No. 2. The Court promptly issued an order requiring the respondents to show cause by no later than January 20, 2026, why the petition and motion for TRO should not be granted. Dkt. No. 6 at 1. Soon after, the respondents filed a notice explaining that the government is working on the petitioner's removal, but that they would give the petitioner's counsel and the Court at least

three days' notice before effectuating any such removal. Dkt. No. 9 at 1. The respondents also maintained that no notice is required should they choose to move Gallego Osorio outside the Northern District of Texas. *Id.* at 1–2.

On January 5, Gallego Osorio filed a renewed motion for TRO. Dkt. No. 12. The motion asks the Court to stay Gallego Osorio's removal from the United States even though a final order of removal has not yet been entered. *Id.* at 3–4. The motion also requests that the Court vacate its briefing schedule and shorten the respondents' deadline to January 12. *Id.* at 3. This relief is necessary, Gallego Osorio argues, because he has an immigration hearing on January 21 and will need time to "file a meaningful reply." *Id.* The respondents filed a response to the renewed motion. Dkt. No. 13.

Gallego Osorio is currently detained at the Bluebonnet Detention Center in Anson, Texas. Dkt. No. 1 at 1.

2.   **Legal Standard**

Federal Rule of Civil Procedure 65 authorizes courts to issue temporary restraining orders and injunctions. A temporary restraining order, or TRO, is "simply a highly accelerated and temporary form of preliminary injunctive relief." *Hassani v. Napolitano*, No. 3:09-CV-1201, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009). Thus, the party seeking a TRO or preliminary injunction must satisfy the same four-factor standard for preliminary injunctive relief. *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 645 (N.D. Tex. 2021). The party seeking relief must show (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) the balance of hardships weighs in the movant's favor; and (4) issuing the injunction will not disserve the public interest. *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013).

A TRO, like any injunction, is an "extraordinary remedy." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976). "The decision to grant [such relief] 'is to be treated as the exception rather than the rule.'" *Jones v. Bush*, 122 F. Supp. 2d 713, 718 (N.D. Tex. 2000) (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)). To prevail, the movant "must satisfy a cumulative burden of proving each of the four elements" for injunctive relief. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). "Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the TRO or preliminary injunction." *Speed v. America's Wholesale Lender*, No. 3:14-CV-3425, 2014 WL 4755485, at *1 (N.D. Tex. Sept. 24, 2014) (emphasis in original).

3.  Analysis

Gallego Osorio fails to demonstrate a substantial likelihood of success on the merits, which is fatal to his emergency motions for TRO. Given the need to resolve the motions on an accelerated timeline, the Court issues this Order without the benefit of full briefing. The Court will resolve the pending habeas petition (Dkt. No. 1) once it has reviewed the respondents' answer and Gallego Osorio's reply.

    A.    **The *Maldonado Bautista* class action does not require this Court to grant relief.**

In three orders dated November 20, November 25, and December 18, 2025, the Central District of California purported to declare unlawful a U.S. Department of Homeland Security policy detaining illegal aliens under the mandatory-detention provision rather than the discretionary-detention provision and further purported to vacate that policy. *See* __ F. Supp. 3d __ , 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025) (granting declaratory relief to individual petitioners); __ F.R.D. __ , 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025) (certifying class and granting class-wide declaratory relief); __ F. Supp. 3d __ , 2025 WL

3713987 (C.D. Cal. Dec. 18, 2025) (purporting to vacate DHS's mandatory-detention policy but declining to vacate *Yajure Hurtado*).

That policy dates to a July 2025 internal notice (which was later leaked) titled "Interim Guidance Regarding Detention Authority for Applicants for Admission." *See Maldonado Vazquez v. Feeley*, __ F. Supp. 3d __ , 2025 WL 2676082, at *5 & n.2 (D. Nev. Sept. 17, 2025) (describing the leaked DHS policy and noting that the government did not contest its authenticity). The policy advised that "section 235 of the [INA], rather than section 236"—that is, the mandatory-detention provision, not the discretionary-detention provision—"is the applicable immigration detention authority for all applicants for admission" to the United States. *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA Doc. No. 25071607, Am. Immigr. Laws. Ass'n (July 8, 2025).[1] The BIA adopted this broader application of the mandatory-detention provision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (BIA 2025).

In *Yajure Hurtado*, the BIA acknowledged that "for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection," but it did "not recall either DHS or its predecessor, the Immigration and Naturalization Service," ever challenging that practice. *Id.* at 225 n.6. But after reviewing the parties' contentions, the BIA determined that immigration judges lack authority to grant bond hearings to aliens who enter the United States without admission. *Id.* at 229. Thus, two independent agency actions—the DHS policy and the BIA decision in *Yajure Hurtado*—

---

[1] https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/5GKM-JYGX].

concluded that aliens who enter the United States without admission are not entitled to bond hearings.

The Court addressed whether the three *Maldonado Bautista* orders have the authority to bind this Court in *Calderon Lopez v. Lyons*, __ F. Supp. 3d __ , No. 1:25-CV-226, 2025 WL 3683918 (N.D. Tex. Dec. 19, 2025).  For a myriad of reasons, the Central District of California's purported relief is a legal nullity.

First, because *Maldonado Bautista* only purports to vacate the DHS policy and not *Yajure Hurtado*—which likewise sets forth an identical mandate for DHS employees to deny bond—the orders do not offer preclusive relief.  *Id.* at *8–9.  Because the orders do not offer preclusive relief, they are "contrary to Article III's strict prohibition on issuing advisory opinions."  *Id.* at *8 (quoting *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023) (internal quotation marks omitted)).

Second, the INA clearly prohibits the Central District from entertaining jurisdiction over class actions and challenges to the validity of the bond system, instead reserving judicial review for the District for the District of Columbia alone.  *Id.* at *10–11 (discussing 8 U.S.C. § 1252(e)(1), (e)(3)(A)).

Third, the unusual structure of the purported relief would necessitate one of two courses of action—denying this petition and ordering Gallego Osorio to refile in the Central District or adopting the Central District's reasoning as binding on this Court—both of which would require this Court to rebuke Supreme Court precedent.  *Id.* at *12–14; *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (limiting habeas claims to the district of detention); *Garland v. Aleman Gonzalez*, 596 U.S. 543, 554–55 (2022) (generally prohibiting

class-wide injunctive relief under the INA); *Trump v. CASA, Inc.*, 606 U.S. 831, 850 (2025) (prohibiting "class-action workaround[s]").

Because the Central District acted beyond its authority, its orders are "simply void" and cannot bind this Court. *Calderon Lopez*, 2025 WL 3683918, at *6 (quoting *Williamson v. Berry*, 49 U.S. (8 How.) 495, 541 (1850) (further quotation omitted)).

**B.  The Court declines to issue a stay of removal or to vacate its briefing schedule.**

In his renewed motion for TRO, Gallego Osorio requests a stay prohibiting his removal from the United States. Dkt. No. 12 at 3. A stay of removal is inappropriate for at least three reasons. First, no final order of removal has been issued. *Id.* at 4; Dkt. No. 13 at 2. And if a final removal order were to go into effect, Gallego Osorio would be subject to mandatory detention under a different statute, 8 U.S.C. § 1231. Second, Gallego Osorio's habeas petition challenges his continued detention, not his removal. So it is unclear how a stay of removal would remedy the claimed violations. *See* Dkt. No. 13 at 6–7. Third, because "the government has agreed that it will provide meaningful notice," there is no imminent threat of removal warranting the exceptional remedy of a TRO. *A.A.R.P. v. Trump*, 778 F. Supp. 3d 882, 887 (N.D. Tex. 2025).

Next, Gallego Osorio requests an order preventing the respondents from transferring him outside the Northern District of Texas without prior notice. Dkt. No. 12 at 3. If he is concerned that an out-of-district transfer would divest the Court of jurisdiction, then he is mistaken. *See id.* at 4. "It is well established that jurisdiction over the petitioner attaches with the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Smith v. Fleming*, No. 4:02-CV-440, 2002 WL 31114021, at *2 (N.D. Tex. Sept. 20, 2002) (citing *McClure v. Hopper*, 577 F.2d 938,

939–40 (5th Cir. 1978)); *see also Moler v. Wells*, 18 F.4th 162, 166 n.7 (5th Cir. 2021) (explaining that "venue [is] determined at the outset of litigation and [is] not affected by subsequent events" (alternations in original and quotation omitted)).

In any event, the respondents have broad discretion to determine where an alien is detained, as well as when and whether the alien should be moved. "The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1). "*Courts* should not be micro-managing this issue." *Candido v. Bondi*, No. 25-CV-867, 2025 WL 3123696, at *2 (W.D.N.Y. Nov. 7, 2025) (emphasis in original). Indeed, courts have concluded that they lack jurisdiction to enjoin the government from transferring immigration detainees to other judicial districts, as those decision are committed to the Attorney General's discretion. *See, e.g.*, *Marquez-Diaz v. Ripa*, No. 25-CV-23256, 2025 WL 2061675, at *3 (S.D. Fla. July 22, 2025) (collecting cases). The Court sees no good reason to deviate from those decisions.

To the extent Gallego Osorio claims that an out-of-district transfer without prior notice "would severely impede [his] access to counsel and his ability to prepare for his upcoming hearing," the Court is unpersuaded. Dkt. No. 12 at 3. An alien "does not have the right to be detained where he believes his ability to obtain representation and present evidence would be most effective." *Calla-Collado v. Att'y Gen.*, 663 F.3d 680, 685 (3d Cir. 2011). Gallego Osorio presents zero evidence that he would have diminished access to counsel in a different detention facility or that he would be unable to prepare for his immigration hearings. And he does not explain how a lack of pre-transfer notice produces irreparable harm that must be addressed through the extraordinary remedy of a TRO. At this juncture, Gallego Osorio's assertions are entirely speculative. Without a showing of

"certainly impending" future injury, the Court cannot grant emergency injunctive relief. *See Aransas Project v. Shaw*, 775 F.3d 641, 664 (5th Cir. 2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

Lastly, the Court declines Gallego Osorio's request to vacate the current briefing schedule. *See* Dkt. No. 6. His request is premised on a hypothetical: that an immigration judge will order Gallego Osorio removed at a hearing on January 21, prompting his removal as early as January 24.[2] Dkt. No. 12 at 3. But that has not yet come to pass. Again, if the respondents initiate Gallego Osorio's removal while this litigation is pending, and if he believes that a stay of removal is an appropriate remedy despite his detention-centric claims, then he may move for a stay at the appropriate time.

**4.   Conclusion**

Because Gallego Osorio fails to show a substantial likelihood of success on the merits, the Court denies his emergency motions for TRO (Dkt. Nos. 2; 12). The Court also denies his requests to enter a stay of removal and vacate the current briefing schedule. The habeas petition (Dkt. No. 1) remains pending.

So ordered on January 6, 2026.

*[signature]*
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE

---

[2] As the respondents explain, this hypothetical timeline is both unrealistic and questionable as a matter of immigration-court procedure. Dkt. No. 13 at 3–4.