UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

OSCAR DARIO GALLEGO OSORIO,

     Petitioner,

v.                                                                  No. 1:25-CV-293-H

MARCELLO VILLEGAS, et al.,

     Respondents.

## ORDER

     The Fifth Circuit held recently that aliens who are present in the United States without previously being admitted by immigration authorities—also known as "applicants for admission"—must be detained under the INA. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Oscar Dario Gallego Osorio, a native and citizen of Colombia, contends that *Buenrostro-Mendez* expressly exempts aliens like him, who were paroled into the United States. His habeas petition therefore seeks relief under the text of the INA and the Fifth Amendment's Due Process Clause.

     But Gallego Osorio's portrayal of *Buenrostro-Mendez* does not match reality. Far from making an exception for paroled aliens, that decision provides that *all* unadmitted aliens are subject to mandatory detention. *See* 166 F.4th at 498. Thus, *Buenrostro-Mendez* forecloses Gallego Osorio's INA claim. Moreover, neither the substantive nor procedural veins of due process afford alien petitioners a bond hearing. Due process is a contextual concept, and in the context of alien removal, it is a limited one. Congress determined that aliens like Gallego Osorio are not entitled to bond, but they are permitted to remain in U.S. custody and fight to remain here. That is more than sufficient process so far as the Due Process Clause is concerned. Therefore, the petition (Dkt. No. 1) is denied.

## 1.    Background

Gallego Osorio was detained while illegally crossing into the United States at or near Eagle Pass, Texas in September 2022. Dkt. No. 18 at 5. Amidst a wave of illegal entries across the Texas border and a resulting lack of space to hold detainees, ICE released Gallego Osorio into the United States. *See* Dkt. No. 17 at 3. Initially, he was released on humanitarian parole. *Id.*; Dkt. No. 26 at 2; *see* 8 U.S.C. § 1182(d)(5)(A). But once his parole ended the following year, ICE initiated removal proceedings against him. Dkt. No. 17 at 3. Gallego Osorio received a Notice to Appear, charging him with removability as an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." Dkt. No. 18 at 5; *see* 8 U.S.C. § 1182(a)(6)(A)(i). After he received the NTA, Gallego Osorio says he was released on recognizance pursuant to Form I-286, a document for aliens subject to discretionary release under 8 U.S.C. § 1226. Dkt. No. 26 at 2. Gallego Osorio was free during the following two years, but in November 2025, ICE detained him and placed him in custody at the Bluebonnet Detention Center in Anson, Texas. Dkt. No. 17 at 3.

While detained, Gallego Osorio challenged ICE's custody determination—including its decision that he must be detained without bond—before an immigration judge. *See* Dkt. No. 1 at 5. The IJ found that he lacked jurisdiction to consider Petitioner's bond request. *Id.* His decision stemmed from the Board of Immigration Appeals' recent opinion in *Matter of Yajure Hurtado*, holding that aliens present in the United States without admission must be detained without bond under Section 1225(b)(2)(A) of the INA for the duration of their

removal proceedings. 29 I. & N. Dec. 216, 220 (BIA 2025). It is unclear whether Gallego Osorio appealed, but doing so would have been futile.[1]

Instead, Gallego Osorio filed a petition for a writ of habeas corpus on New Year's Eve 2025. Dkt. No. 1. The original petition sought relief as a member of the purported Bond Eligible Class in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873. *See* 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025) (class certification order). The same day, he filed a TRO seeking his immediate release or a bond hearing based on that decision. Dkt. No. 2. A few days later, he filed yet another TRO that sought to enjoin the respondents from removing him and to expedite briefing. Dkt. No. 12. The Court denied both TRO motions (Dkt. No. 14); the respondents answered (Dkt. Nos. 17; 18); and Gallego Osorio replied (Dkt. No. 19).

While litigation was underway in this case, the Fifth Circuit issued its decision in *Buenrostro-Mendez*, which agreed with *Yajure Hurtado* and upheld the government's mandatory-detention policy under Section 1225. *See* 166 F.4th at 498. The Fifth Circuit turned to the plain language of Section 1225, which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A).

---

[1] On February 18, 2026, the Central District of California purported to vacate *Yajure Hurtado*. *Maldonado Bautista v. Santacruz*, ___ F. Supp. 3d ___, No. 5:25-CV-1873, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026). But as the Court explained in *Calderon Lopez v. Lyons*, the Central District lacks authority to enter such relief. 813 F. Supp. 3d 692, 705–10 (N.D. Tex. 2025). Moreover, in a March 31 order, a unanimous panel of the Ninth Circuit stayed the Central District's vacatur and class-certification orders pending appeal. *Maldonado Bautista v. DHS*, No. 26-1044, Dkt. No. 17 (9th Cir. Mar. 31, 2026). *Yajure Hurtado* binds immigration judges, meaning it would be "an exercise in futility" to seek a bond hearing. *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000). Thus, Gallego Osorio's petition does not present an exhaustion problem. *Id.*

The Fifth Circuit found "no material disjunction" between the phrases "applicant for admission" and "seeking admission," and thus concluded that all applicants for admission fall within Section 1225(b)(2)(A)'s grasp. *Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Garibay-Robledo v. Noem*, 814 F. Supp. 3d 747, 754 (N.D. Tex. 2026)).

After the Fifth Circuit issued *Buenrostro-Mendez*, Gallego Osorio moved to amend his petition. Dkt. No. 20. He acknowledged *Buenrostro-Mendez* "generally upheld the government's mandatory detention policy for applicants for admission," but also asserted that *Buenrostro-Mendez* "explicitly and repeatedly limited that holding to individuals who have not been admitted or paroled." Dkt. No. 20 at 1. Since he was paroled under subsection (d)(5)(A), he reasoned, he was entitled to relief. *See id.* In the meantime, he filed another TRO (Dkt. No. 21), which the Court denied (Dkt. No. 22).

The Court granted the motion. Dkt. No. 25. Gallego Osorio's amended petition abandons reliance on *Maldonado Bautista* entirely.[2] Instead, he argues that he is entitled to release or a bond hearing under the text of the INA, or alternatively under the Due Process Clause. *See* Dkt. No. 26. Also before the Court is Gallego Osorio's fourth TRO motion, which, like the first and third TRO motions before it, seeks the same relief sought in his petition. *See* Dkt. No. 24.

2.    **Legal Standard**

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to

---

[2] The Court would have denied such relief in light of the Ninth Circuit's stay and the Court's prior decision in *Calderon Lopez*. *See supra*, n.1.

-4-

resolve habeas petitions, including in immigration-detention cases. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

3.    **Analysis**

As noted above, Gallego Osorio raises two claims in his habeas petition—one involving Sections 1225 and 1226 of the INA, and another based on the Fifth Amendment's Due Process Clause. *See* Dkt. No. 26. As explained below, *Buenrostro-Mendez* forecloses Gallego Osorio's statutory claim. Thus, the only claim left for consideration is his due process claim. The Court has considered whether the Due Process Clause entitles illegal aliens to individualized bond hearings in numerous prior cases.[3] Despite eight filings in this case, Gallego Osorio has never elaborated on why his release or a bond hearing is required as a matter of due process. Even so, the Court considers his claim and finds no such relief is required under the Constitution.

A.    ***Buenrostro-Mendez* forecloses Gallego Osorio's INA claim.**

Gallego Osorio contends *Buenrostro-Mendez* does not govern this case. Why? Because that decision "explicitly and repeatedly limited [its] holding to individuals who

---

[3] *Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo*, 2026 WL 81679; *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, 814 F. Supp. 3d 685 (N.D. Tex. 2025).

have not been admitted or paroled." Dkt. No. 20 at 1. Gallego Osorio received humanitarian parole. Ergo, "he falls squarely outside the mandatory detention mandate of [Section] 1225(b) as defined by the [Fifth] Circuit." *Id.*

But *Buenrostro-Mendez* did not say that. The Fifth Circuit rejected the notion that the definition of "'applicant for admission' is a term of art" that stands apart from "its ordinary meaning." 166 F.4th at 503. The phrase "applicant for admission" is defined broadly as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Nowhere does that definition mention parole.[4] Indeed, in rejecting the popular superfluity argument against Section 1225(b)(2)(A)'s application, the Fifth Circuit observed that the supposedly identical sister provision— Section 1226(c)—was not identical because "it also eliminates the option of parole for those to whom it applies." *Id.* at 505.

Far from counseling against Gallego Osorio's detention, *Buenrostro-Mendez* requires it. He is an alien. He is not admitted because he did not "lawful[ly] ent[er] [the country] after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A) (defining "admission" and "admitted"). The various forms that he cites, along with his humanitarian parole, are not to the contrary.[5] As an applicant for admission, binding Fifth Circuit

---

[4] Moreover, *Buenrostro-Mendez* aside, such an argument ignores the text of Section 1225 itself. Section 1225(b)(1) is entitled "Inspection of . . . certain other aliens who have not been admitted or paroled." Section 1225(b)(2) is entitled "Inspection of other aliens." In other words, parole is only relevant for some determinations under subsection (b)(1), but not subsection (b)(2)(A).

[5] As this Court explained in *Goyo Martinez*, humanitarian parole is not a form of admission. 2026 WL 114418, at *3–4, 7. Gallego Osorio's Form I-94 was issued alongside that parole, so it contains no legal significance of its own. *See Resendez Ramos v. Garland*, No. 20-60578, 2022 WL 118957 (5th Cir. Jan. 12, 2022) (discussing role of Form I-94). Moreover, Gallego Osorio's current detention is not undermined by the fact that he was previously released on recognizance under an erroneous read of Section 1226. *See id.* at *7. And finally, Gallego Osorio's Form I-130 grant is not a form of admission. *Bolvito v. Mukasey*, 527 F.3d 428, 431 (5th Cir. 2008).

precedent requires that he be detained without bond under Section 1225(b)(2)(A). *See Buenrostro-Mendez*, 166 F.4th at 498. Thus, Gallego Osorio's INA claim fails.[6]

To the extent Gallego Osorio contends the respondents have violated their own internal regulations by detaining him after previously releasing him under Section 1226 (*see* Dkt. No. 19 at 6–7), he is mistaken. Insofar as DHS's internal regulations "contradict the plain text of [Section] 1225(b)(2)(A), the statute governs because 'a valid statute always prevails over a conflicting regulation.'" *Benitez v. Bradford*, No. 4:25-CV-6178, 2026 WL 82235, at *1 (S.D. Tex. Jan. 8, 2026) (Eskridge, J.) (quoting *Duarte v. Mayorkas*, 27 F.4th 1044, 1060 n.13 (5th Cir. 2022)).

### B.    The Due Process Clause does not require the government to give Gallego Osorio a bond hearing.

Next is Gallego Osorio's claim that the government's refusal to provide a bond hearing violates the Due Process Clause of the Fifth Amendment. Dkt. No. 26 at 3. The claim—which only runs two sentences—is not the model of clarity. As noted above, Gallego Osorio has never availed himself of the ample opportunity to explain why his detention remotely implicates the Due Process Clause. Assuming that he raises both substantive and procedural due process claims, however, he is not entitled to relief.[7]

Start with substantive due process. That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v.*

---

[6] Even if this Court were not bound by *Buenrostro-Mendez*, it would have reached the same result for the reasons discussed in its numerous prior decisions on this issue. *Supra*, n.3.

[7] Gallego Osorio's petition purported to have an attached memorandum of law elaborating on his Fifth Amendment claim. Dkt. No. 1 at 5–6. But the Court has never received any such memorandum from counsel.

*Glucksberg*, 521 U.S. 702, 720–21 (1997)). While still recognizing due-process rights for aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures. The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Muñoz*, 602 U.S. at 911–12. To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention. In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings. In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process." *Id.* Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528. It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526. Against that backdrop, the notion that substantive due process requires a bond hearing is untenable.

A procedural due process claim fares no better. As an "applicant for admission," Gallego Osorio has "only those rights regarding admission that Congress has provided by statute." *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the

United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."). With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission. "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). No part of the statute "says anything whatsoever about bond hearings." *Id.* Accordingly, Gallego Osorio is not entitled to a bond hearing as a matter of procedural due process.

### 4.    Conclusion

In short, Gallego Osorio, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A). *Buenrostro-Mendez*, 166 F.4th at 498. And the Due Process Clause does not require a bond hearing in these circumstances. Thus, the petition for a writ of habeas corpus (Dkt. No. 26) is denied. The motion for a temporary restraining order (Dkt. No. 24) is denied as moot.

So ordered on April 2 8, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE